# EXHIBIT A

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| THOMCORP, INC., d/b/a THOMTEC INDUSTRIAL SALES COMPANY | : | CASE NO: 3:12-cv-01075 |
|---|---|---|
| | : | Judge Kevin H. Sharp |
| v. | : | |
| | : | Mag. Judge Joe Brown |
| AMEC INDUSTRY, INC. | : | |

## AFFIDAVIT OF THOMAS LAND

Thomas Land, an adult over the age of majority, being duly sworn according to law, appeared before me the undersigned officer and stated the facts set forth in the foregoing affidavit are true and correct to the best of his knowledge, information and belief.

1. I am over 18 years of age and am competent to make this affidavit. If called upon to do so, I would and could testify to the facts set forth in this affidavit.

2. I am the owner and president of Plaintiff ThomCorp, Inc. d/b/a ThomTec Industrial Sales Company in this action. I am filing this affidavit in support of Plaintiff's Reply in Support of Its Motion for Partial Summary Judgment.

3. In the spring of 2002, Shu Qu and I negotiated the terms of a contract for my company to market and promote the sale of Amec products. A true and correct copy of that contract is attached as Exhibit 1.

4. For the next nine years, ThomCorp, Inc. successfully marketed and promoted the sale of Amec products. Amec paid commissions to ThomCorp for those sales at the rate of 8%, which is the commission rate in the contract. *See* Ex. 1.

5. Throughout this nine-year period, no one ever told me that the Amec corporate entity had changed. ThomCorp, Inc. did its job of marketing and promoting Amec products

throughout this time. And throughout this time period, Amec's business never changed. Additional products were added to the Amec catalog, but the products that ThomCorp., Inc. agreed to market and promote in the contract continued to be sold by Amec, and ThomCorp, Inc. continued to promote them.

6. I received a letter from Shu Qu dated April 30, 2011. In the letter, Shu Qu requested that ThomCorp, Inc. terminate the contract. A true and correct copy of this letter is attached as Ex. 2. I chose not to terminate the contract.

7. From the spring of 2002 and for the next nine years, Amec and Shu Qu accepted and paid for ThomCorp's services without ever stating that our contract was no longer in effect.

8. The attached Exhibit 1 is the only contract between ThomCorp and an Amec entity. ThomCorp never entered into any other contract, written or verbal, with any Amec entity.

Dated: December 6, 2013

_____
Thomas Land

2

# EXHIBIT 1

## SALES REPRESENTATIVE'S CONTRACT

This Agreement, made and entered into this 1st day of May 2002, by and between **Amec International Co., Inc., 11719 Clark Street, Arcadia, CA 91006**, hereinafter referred to as the "Company", and **Thomtec Industrial Sales Company, 1256b Old Hillsboro Rd, Franklin, TN 37069**, hereinafter referred to as the "Representative."

### WITNESSETH:

That in consideration of the mutual promises hereinafter contained and intending to be legally bound hereby, the parties hereto agree as follows:

1. Subject to the terms and conditions set forth, the Company appoints the Representative, and the Representative accepts such appointment, to act as the exclusive sales representative in the sale of the following listed articles manufactured or sold by the Company, (hereinafter referred to as the "Products"), to the classes of purchasers set forth below, within the territory indicated hereinafter:

**PRODUCTS:** Sprockets, Gears and Gear racks, sheaves, bushing and pulley, and related Machinery Parts

**CLASSES OF PURCHASERS:** Resale accounts of all types and original equipment manufacturers.

**TERRITORY:** The Company hereby grants to the Representative the exclusive right and license to solicit orders for the sale of the Products in the following states:

*Tennessee, Mississippi,* Kentucky added 1-1-03

2. The Company agrees as follows:   1-1-04 Mississippi given to JW Cooler in Atlanta, GA

### A. COMMISSIONS:

Company will pay the Representative a sales commission of eight percent (8%) on sales delivered into the territory, except as hereinafter provided:

* Under certain circumstances, such as special pricing, in which both parties are in mutual agreement, a commission percent other than the normal (8%) may be used.

Commissions will be considered payable or earned when the products are invoiced by Company. Commissions payable will be paid *no later than the 30th day of the month following the month the product is invoiced by the Company.* Commission rates apply to net amount of invoice for Company products exclusive of freight, other shipping and handling charges, taxes, other unusual costs and after deducting discounts. Company shall have the right to debit and recoup from the Representative commissions credited or paid but not earned for invoices which for one reason or another become uncollectable and there is no return of product to Company due to lack of availability or the products' unsaleable condition.

### B. PRICE BOOKS, LITERATURE AND SAMPLES:

The Company will furnish the Representative with current price books, product samples and literature in numbers sufficient to reasonably support the Representative's effort to promote the sales of the Company's products.

3. The Representative agrees as follows:

A. To promote faithfully the sale of the Products to the best of his ability in the territory hereby granted to him.

B. To abide by the selling prices, rules and regulations of the Company, to make no guaranties, warranties, or other representations concerning the Products other than such as are expressly authorized by the Company, and include in all quotations and proposals, the Company's standard warranty, tax and limitation of liability clauses, unless otherwise instructed in writing by the Company.

C. To take all orders subject to acceptance by the Company and to forward to the Company ever order received from a purchaser; the Company shall have the right to accept or reject in its sole discretion any or all such orders.

4. The parties hereto mutually agree as follows:

A. The Representative shall operate as an independent contractor, and nothing contained herein shall be deemed to constitute the Representative as an attorney in fact or mandatory for purpose whatsoever. The Representative shall have no authority to obligate or commit the Company in any matter, cause or thing without the prior written consent of the Company, or to use the Company's name in any way not specifically authorized by this agreement.

B. The Representative shall employ such adequate personnel as he shall deem expedient and desirable to perform his contractual undertakings. It is understood that such employment shall be at the risk, expense and supervision of the Representative and the Company shall in no way be responsible to any person for salary, commission, expenses or otherwise.

C. This agreement shall not be assigned by the Representative, nor shall the Representative delegate any of the rights or duties hereunder without the written consent of the Company.

D. The term of this agreement shall commence on the date hereof, and shall continue year to year.

E. This agreement may be terminated by either party upon a ninety (90) day written notice by registered mail. The Representative shall be entitled to receive commissions on orders received by the Company prior to termination of this agreement under commission payment conditions stated in 2A of this agreement. Commissions on Extended Delivery Orders entered prior to notification of termination will be paid to the terminated Representative for the life of the extended delivery date.

F. It is understood that relationship between the Company and Representative is no that of employer and employee, and that Representative acts as an independent contractor only.

G. This agreement contains the entire understanding of the parties, and shall supersede any other oral or written agreements. It may not be modified in any way without the written consent of both parties.

H. This agreement shall be governed by and construed in accordance with the laws of the State of California, USA. The parties agree that, if any controversy, dispute or claim shall arise out of the Agreement, its interpretation or breach, the parties hereto shall consult with each other in good faith to settle such controversy or dispute.

**IN WITNESS WHEREOF**, the parties have executed this Agreement on the day and year first above written.

BY: _[signature]_
For: AMEC INT'L CO. Inc.

By: _Thomas W. Lend_
For: ThomTec Industrial Sales Company, Inc.
April 15, 2002

# EXHIBIT 2

# AMEC INDUSTRY INC
1805 E. FRANCIS ST
ONTARIO, CA91761
TEL: 909-923-5118  FAX:909-923-5080

Date: 4-30-2011

Mr. Thomas Land
Thomtec Industrial Sales
P.O. box 159042
Nashville, TN37215

Dear Tom

I hope this letter finds you well.

I am writing to you today in regards to our contract between AMEC and Thomtec Industrial Sales

In this new and often uncertain economy, we are forced to review our bottom line with all of our representatives and customers. Without any easy way to articulate this to you, we are politely requesting the termination of our contract with your company.

Tom, we greatly appreciate all of your efforts in representing AMEC industry inc., and wish you many successes with all of your future business endeavors.

Respectfully

Sue QU